UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAREN C. DEVINE.,

                              Plaintiff,

                  v.

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,[1]

                              Defendant.
_____

**DECISION AND ORDER**

1:18-CV-00838 (JJM)

        This is an action brought pursuant to 42 U.S.C. §§ 405(g) to review the final determination of defendant Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [9, 11].[2] The parties have consented to my jurisdiction [13]. Having reviewed the parties' submissions [9, 11, 12], this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

        The parties' familiarity with the administrative record [8] is presumed. The plaintiff filed an application for DIB on October 24, 2014. [8], pp. 15, 95. Plaintiff was last

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

[2] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

insured for DIB on December 31, 2019. Id., p. 15.[3] She alleged a disability beginning on May 21, 2014. Id.

Plaintiff's claims were initially denied. Id., pp. 109-20. An administrative hearing was held on March 29, 2017. *See* id., pp. 52-94 (transcript of hearing). Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Ellen Parker Bush. *See* id. On July 20, 2017, ALJ Bush issued a decision finding plaintiff not disabled. Id., pp. 15-33. Following an unsuccessful request for review with the Appeals Council (id., pp. 1-4), plaintiff initiated this action.

**A.     ALJ Bush's RFC Determination**

ALJ Bush found that plaintiff's severe impairments were "right carpal tunnel syndrome; cervical spondylosis; chronic cervical radiculopathy; degenerative changes of the lumbar and thoracic spine; status post carpal tunnel release; posttraumatic stress disorder (PTSD); anxiety disorder; and dysthymic disorder".[4] Id., p. 17. ALJ Bush found that plaintiff had the residual functional capacity ("RFC") to perform light work, with some limitations:

> "claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she can frequently balance; occasionally stoop; and frequently finger with the right dominant upper extremity. She can also understand, remember, and carry out simple instructions with few and minor changes to task for one-hour periods at a time, and then will need a short break in order to stretch or use the bathroom."

Id., p. 21.

---

[3] The ALJ's recitation of this fact conflicts with other information in the record, which states that plaintiff's last insured date was December 31, 2018. [8], p. 198. This discrepancy is not material to this decision.
[4] ALJ Bush also considered, but rejected for purposes of this step of the sequential evaluation, *inter alia*, evidence of irritable bowel syndrome ("IBS"), and stress-induced urinary incontinence. [8], p. 18. Neither plaintiff nor the Commissioner challenges ALJ Bush's findings concerning plaintiff's severe impairments.

-2-

To support her RFC findings, ALJ Bush considered the opinions concerning plaintiff's physical and mental functional limitations from three sources: 1) consultative examiner Samuel Balderman, M.D.; 2) consultative examiner Kristina Luna, Psy.D.; and 3) plaintiff's treating mental health nurse practitioner, Rose Ann R. Flick, N.P. and Nicole Drozdiel, LMSW. Id., pp. 22-27.

ALJ Bush assigned "great weight" to Dr. Balderman's January 15, 2015 opinion. Id., p. 22. Dr. Balderman found that plaintiff had a "moderation [*sic*] limitation for frequent changes of position of the head" and mild limitations for "repetitive bending and lifting" and "use of his [*sic*] right had for repetitive fine motor work". Id., pp. 22, 275. His report did not include any other specific functional limitations. ALJ Bush found it significant that Dr. Balderman's opinion was "consistent with his examination findings and with other evidence in the file", even though he "only examined the claimant on just this one occasion". Id., pp. 22-23.

Turning to plaintiff's limitations due to her mental health conditions, ALJ Bush assigned "great weight" to Dr. Luna's January 15, 2015 opinion. Id., p. 24. After her psychiatric evaluation of plaintiff, Dr. Luna concluded that plaintiff had "no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, and learn new tasks". Id., pp. 24, 280. She found plaintiff "mildly limited in her ability to perform complex tasks independently, make appropriate decisions and relate adequately with others" and "moderately limited in her ability to maintain attention and concentration and appropriately deal with stress". Id. ALJ Bush assigned "great weight" to Dr. Luna's opinion because "in spite of her prior unfamiliarity of the claimant's condition, her opinion is consistent with the medical evidence of record as a whole". Id., p. 24. In addition, "Dr. Luna cited mildly objective deficits and decreased functioning on remembering and

maintaining focus and concentrating", which ALJ Bush "fully considered when crafting the limitations" in the RFC. Id. Lastly, ALJ Bush noted that Dr. Luna "specifically defined the frequency with which the claimant can engage in mental activities on a regular basis". Id.[5]

ALJ Bush gave "little weight" to the limitations assessed in the January 9, 2017 Mental Residual Functional Capacity Questionnaire completed by plaintiff's treating mental health providers, Nurse Practitioner Flick and Nicole Drozdiel, LMSW. Id., p. 26. That functional assessment was based upon plaintiff's "weekly" visits since February 2015. *See* id., pp. 26, 369, 373. In their functional assessment, plaintiff's providers outlined their course of treatment, diagnoses, prescribed medications, and clinical findings based upon their mental status examinations. *See* id., p. 369. They assessed plaintiff's current Global Assessment of Functioning ("GAF") score as 53 and stated that her highest GAF score within the past year was 57.[6] NP Flick and Ms. Drozdiel completed several charts asking them to rate plaintiff's ability to perform specific mental activities required of unskilled, semiskilled, and other jobs, assessed plaintiff's abilities. Among the 25 different areas of functioning, NP Flick and Ms. Drozdiel assessed limitations in 19. They assessed plaintiff's ability to "deal with normal work stress" as "seriously limited, but not precluded". Id., p.26, 371. They opined plaintiff was "unable to meet competitive standards" in her ability to "maintain attendance", "complete a normal workday and workweek", and function "at a consistent pace". Id.

---

[5] Aside from use of the terms "mildly" and "moderately", Dr. Luna does not specifically define the frequency with which plaintiff can engage in mental activities. ALJ Bush's assertion to the contrary(*see* id., p. 24) is incorrect.

[6] Plaintiff's GAF score of 55 on October 5, 2016 placed her in the "51-60" category which indicates "[m]oderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers)." DSM–IV, at 34; Zabala v. Astrue, 595 F.3d 402 (2d Cir. 2010).

-4-

Explaining her decision to assign "little weight" to NP Flick's and Ms. Drozdiel's functional assessment, ALJ Bush considered only NP Flick's treatment notes. See id., pp. 26-27. ALJ Bush stated that Ms. Flick's treatment notes "do not reflect the significant restrictions given in her questionnaire" and "reveal that claimant has experienced significant improvement with treatment". Id., p. 26. The record contains only a few records concerning Ms. Drozdiel's weekly sessions with plaintiff, but none of her treatment notes. See e.g. id., pp. 294-97, 362.

Lastly, ALJ Bush considered plaintiff's testimony of her functional limitations, including testimony about bathroom breaks due to symptoms of IBS. Id., p. 21-22, 26. Plaintiff testified that she spends "approximately four hours on and off" in the bathroom every morning due to IBS. Id., p. 58. ALJ Bush found plaintiff's testimony "not entirely consistent with the medical evidence and other evidence in the record" overall. Id., p. 22. Specifically with respect to plaintiff's testimony of her IBS symptoms, ALJ Bush found "the record shows that her IBS is mild and there is no objective evidence to support the excessive bathroom visits alleged". Id., p. 26.

Based upon the RFC and the vocational expert's testimony, ALJ Bush determined that plaintiff could not perform her past work, but that there were jobs available in the national economy that plaintiff could perform. She concluded, therefore, that plaintiff was not disabled. Thereafter, this action ensued.

**ANALYSIS**

A. **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42

U.S.C. § 405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that the RFC is not supported by substantial evidence. Plaintiff's Memorandum [9-1], pp. 18-26.  Specifically, plaintiff argues that ALJ Bush was required to incorporate the medical opinions to which she assigned great weight into her RFC, or to explain why she did not accept those limitations.  Id., pp. 19-20.  Plaintiff further argues that ALJ Bush failed to adequately evaluate the functional opinion of NP Flick, and improperly relied upon her own lay opinion of the information in plaintiff's medical record.  Id., pp. 20-22.  Further, plaintiff argues that ALJ Bush erred because she did not make specific findings concerning the frequency and length of anticipated bathroom breaks, or plaintiff's ability to deal with workplace stress.  Id., pp. 22-25.  Lastly, plaintiff argues that the ALJ improperly, and without explanation, relied upon portions of the vocational expert's testimony that were contrary to SSA policy with respect to the number of hours an individual must be able to sustain attention and concentration in order to be employable (*i.e.* for 2-hour segments of time throughout the work day).  Id., pp. 25-26.

In response, the Commissioner argues that  ALJ Bush "properly considered the evidence of record as a whole and correctly found that Plaintiff retained the RFC to perform light work" with some limitations.  Commissioner's Brief [11], p. 11.  Specifically, the Commissioner

argues that ALJ Bush's RFC finding was properly supported by, among other things, plaintiff's "routine and conservative treatment with relatively minimal objective findings", the objective imaging and diagnostic testing, her few complaints of incontinence, and plaintiff's "limited" mental health treatment and "relatively normal mental status exam finding[s]". Id., pp. 11-13. With respect to Dr. Balderman's opinion of a limitation to frequent changes of head position, the Commissioner argues that ALJ Bush was not required to adopt such a limitation, as the vocational expert had testified "only that a restriction to occasional changes in head position would preclude employment". Id., p. 15. The Commissioner further argues that ALJ Bush: properly evaluated NP Flick's opinion (id., pp. 16-17); properly addressed Dr. Luna's opinion of plaintiff's limited ability to deal with workplace stress by concluding plaintiff could "understand, remember, and carry out simple instructions with few and minor changes to task for one-hour periods at a time" (id., pp. 17-18; [8], p. 21); and addressed plaintiff's need for bathroom breaks by finding that plaintiff will need short, hourly breaks to use the bathroom (id., pp. 18-19). Lastly, the Commissioner argues that the vocational expert's testimony that her opinion concerning off-task time was based on her professional experience satisfied the Commissioner's burden to demonstrate, with substantial evidence, that there were a significant number of jobs in the economy that plaintiff could perform despite her limited RFC. Id., pp. 19-20.

    **B. Was the RFC Supported by Substantial Evidence?**

        I agree with plaintiff that the RFC is not supported by substantial evidence due to the errors in ALJ Bush's Decision with respect to plaintiff's functional limitations. Accordingly, remand is required for a proper RFC analysis, and for further development of the record, if necessary.

### 1. Is ALJ Bush's Physical RFC Assessment Supported by Substantial Evidence?

It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). However, when an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted. *See* Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruing 96-8p (1996)"). Further, when an ALJ assesses a functional limitation, those limitations must be supported by medical evidence in the record. Absent a competent medical opinion concerning a plaintiff's functional abilities, an ALJ is "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018).

I agree with plaintiff that ALJ Bush's failure to incorporate into the RFC limitations concerning changes to head position, and failing to support her RFC findings concerning plaintiff's need for bathroom breaks were errors that require remand for further analysis and possible additional development of the record.

### a. ALJ Bush was Required to Include, or to Explain Her Omission of, the Functional Limitations Assessed by Dr. Balderman

Here, the only medical opinion in the record concerning plaintiff's physical functional limitations was that of Dr. Balderman. ALJ Bush accorded "great weight" to Dr. Balderman's opinion. [8], p. 23. After examining plaintiff, Dr. Balderman opined plaintiff had three functional limitations:

1. "moderation limitation for frequent changes of position of the head";
2. "mild limitation with repetitive bending and lifting"; and
3. "mild limitation in the use of his [*sic*] right hand for repetitive fine motor work".

Id., pp. 22, 275. The RFC reached by ALJ Bush, however, does not incorporate all of these limitations. ALJ Bush found that plaintiff "has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except: she can frequently balance; occasionally stoop; and frequently finger with the right dominant upper extremity". Id., p. 21. In addition, ALJ Bush found that each hour, plaintiff "will need a short break in order to stretch or use the bathroom". Id. ALJ Bush did not incorporate into the RFC any limitation concerning plaintiff's functional ability to change the position of her head.[7]

ALJ Bush acknowledged in her opinion that Dr. Balderman's report included this limitation. Id., p. 22. She did not, however, further analyze that limitation or offer any basis for rejecting its inclusion in the RFC. Accordingly, I reject the Commissioner's argument that ALJ Bush "expressly discussed" this limitation in her decision. [11], p. 17. The Commissioner further argues that ALJ Bush's failure to provide an explanation for her rejection of this

---

[7] ALJ Bush also failed to include in the RFC any limitation concerning repetitive bending and lifting. However, neither party challenges this omission.

limitation was harmless error because the "VE testified only that a restriction to occasional changes in head position would preclude employment". Id., p. 15. I disagree.

First, Dr. Balderman does not offer in his report any explanation of the frequency or specific motions he intended to include in his "moderation limitation for frequent changes of position of the head". Further, the vocational expert's testimony on this issue demonstrates that a tolerance for only occasional changes of position of the head would preclude all work. Upon being questioned by plaintiff's attorney concerning this limitation, the vocational expert testified:

> Q: [I]f in the first hypothetical, they could only tolerate just occasional changes of position of the head, would that impact their work – ability to do that work?
>
> A: Occasional changes in positions?
>
> Q: Of the head, right, up or down or left to right
>
> * * *
> A: They couldn't do the work, the previous.
>
> Q: And could they then do any other work as outlined in hypothetical 2?
>
> A: No, there would be no employment.
>
> * * *
> ALJ: Okay, just clarify what you just said. You said is limited – can only moving their head any direction, then that would eliminate all employment?
>
> VE: Yes, it would make it hard to perform. You can move your head occupations or any of the jobs [*sic*], I suspect would make it hard to make in any kind of employment.
>
> BY ATTORNEY:
>
> Q: All right, and then the same question with regard to the sedentary hypo, the last one.
>
> A: Well, yeah that would eliminate all jobs.

-10-

> Q: Okay.
>
> A: The person could not work, and that's based on my experience.

[8], pp. 91-92. The Commissioner argues, without regulatory or case law support, that the vocational expert's testimony was relevant to a "far more limiting" restriction (*i.e.* a limitation to "occasional" changes in head position) than Dr. Balderman's "moderation limitation for frequent changes of head position". [11], p. 15. The Commissioner's argument assumes that a <u>moderate</u> limitation of a <u>frequent</u> movement is equivalent to being able to move one's head more frequently than occasionally. However, Dr. Balderman made no such statement. Dr. Balderman's opinion finds plaintiff is limited in her ability to move her head, but the extent of that limitation is, at best, ambiguous. If ALJ Bush required clarification of Dr. Balderman's limitation, she had the duty to seek that clarification to ensure a full and complete record. <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) ("because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record") (internal quotations and alterations omitted).

Without clarification from Dr. Balderman concerning this limitation, the Commissioner's assessment of the severity of the restriction is a guess. Moreover, ALJ Bush did not provide any analysis in her opinion to support her rejection of this limitation. This court is, therefore, unable to evaluate her reasons for doing so. Accordingly, the Commissioner's analysis is an improper *post hoc* rationalization of ALJ Bush's determination. *See* <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action") (internal quotation omitted).

This matter must, therefore, be remanded for a proper consideration of Dr. Balderman's limitation to changes in head position, and for further development of the record on this issue, if necessary.

### b. ALJ Bush was Required to Base her Limitations Concerning Breaks on a Medical Opinion

ALJ Bush included in the RFC a limitation that plaintiff must have a "short break in order to stretch or use the bathroom" every hour. Her analysis of this issue is limited to two sentences:

> "[Plaintiff] reported that she performs few household activities, stating that she spends about four hours in the morning in the bathroom due to her IBS issues. Nonetheless, the record shows that her IBS is mild and there is no objective evidence to support the excessive bathroom visits alleged."

[8], p. 26. ALJ Bush outlined some of the medical evidence of plaintiff's IBS and incontinence at step two of her analysis before concluding that they were non-severe impairments. Id., p. 18. Nowhere, however, did ALJ Bush identify any medical or other source opinion in the record opining that a "short", hourly bathroom break would sufficiently address the plaintiff's IBS and incontinence symptoms. No such opinions appear in the record.

Based upon the medical evidence, ALJ Bush properly considered in her RFC analysis the plaintiff's testimony and the medical evidence that plaintiff experiences symptoms of IBS and incontinence. See Reices-Colon v. Astrue, 523 Fed Appx. 796, 798 (2d Cir. 2013) (Summary Order) (the ALJ's failure to include anxiety and panic disorders at step two did not require remand where the ALJ specifically considered both conditions in subsequent steps of the five-step analysis). However, absent medical evidence of a plaintiff's functional limitations, "[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.

2000); Burgess, 537 F.3d at 129 (*citing* Shaw, supra). The ALJ may not fill a gap in proof with her own view of the medical evidence. Instead, "[a]t the very least, the ALJ should have sought a conclusive determination from a medical consultant who was able to evaluate the plaintiff's entire medical record, given the absence of other evidence in the record by treating or examining sources specific to plaintiff's non-exertional limitations." Stackhouse v. Colvin, 52 F.Supp.3d 518, 521 (W.D.N.Y. 2014) (internal quotation and citation omitted). The absence of substantial evidence to support an ALJ's findings concerning plaintiff's RFC is a basis for remand. Mariani v. Colvin, 567 Fed. Appx. 8, 11 (2d Cir. 2014) (Summary Order).

The medical evidence demonstrates that the plaintiff's issues with incontinence were ongoing. The most recent evidence in the record of plaintiff's treatment with her urologist indicates continued problems with urinary and fecal incontinence, positive findings on a diagnostic "urodynamic study", and includes a care plan to "proceed with percutaneous nerve evaluation". [8], pp 340-41. Absent from the record, however, is any information from plaintiff's urologist - or any other physician[8] - concerning the frequency of plaintiff's bathroom breaks. Accordingly, meaningful judicial review of this limitation is precluded due to the lack of medical evidence concerning plaintiff's limitations with respect to bathroom usage, coupled with the lack of any analysis of this issue in the ALJ's decision. *See* Lowe v. Colvin, 2016 WL 624922, *7 (W.D.N.Y. 2016) (remanding because ALJ's failure to, among other things, "make specific factual findings regarding the frequency and duration of bathroom breaks required" by plaintiff "have frustrated the Court's ability to conduct a meaningful review of the substantiality of the evidence supporting the ALJ's decision").

---

[8] Although plaintiff treated with her primary care physician, Sawaran S. Bambrah, M.D., for both physical and mental health issues (*see* [8], pp. 71-72) very few of his records are included in the medical evidence (*see* id., pp. 288, 374-383).

Further, given the vocational expert's testimony, the ALJ's analysis of this issue could be critical to the outcome of this claim. *See* Cosnyka v. Colvin, 576 Fed. Appx. 43, 46 (2d Cir. 2014) (Summary Order) ("[t]here is no evidence in the record to the effect that Cosnyka would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday"). The vocational expert testified that there were unskilled jobs an individual could perform even if required to take a "short break" to stretch or use the bathroom after an hour of work. [8], pp. 85-86. Upon questioning from plaintiff's attorney, the vocational expert clarified that, based on her experience, a person could be off task up to 10% of the time - or up to 6 minutes per hour - in the unskilled jobs she identified before the person would not be employable. Id., pp. 89-91. If a person was away from his or her work station for any reason ten minutes in every hour, based upon the vocational expert's testimony, all work would be eliminated for that individual. Id., p. 92.

Accordingly, this matter is remanded for a proper analysis of the plaintiff's physical RFC, including further development of the record, if necessary, as to how plaintiff's ability to move her head and her need for bathroom breaks functionally affect her ability to work. Cosnyka, 576 Fed. Appx. at 46 ("[b]ecause there is no substantial evidence for the ALJ's six-minutes per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs Cosnyka could perform, we cannot uphold the ALJ's decision to reject Cosnyka's claim for benefits. Further factfinding would plainly help to assure the proper disposition of Cosnyka's claim") (internal quotations omitted).

**2. Is ALJ Bush's Mental RFC Assessment Supported by Substantial Evidence?**

With respect to plaintiff's ability to perform the mental demands of work, ALJ Bush found that plaintiff retained the RFC to perform light work with the limitation that plaintiff can "understand, remember, and carry out simple instructions with few and minor changes to task for one-hour periods at a time, and then will need a short break in order to stretch or use the bathroom". [8], p. 21. To support her analysis and findings concerning plaintiff's mental RFC, ALJ Bush assigned "great weight" to the January 15, 2015 report of consultative examiner Dr. Luna and "little weight" to the opinions contained in the Mental Residual Functional Capacity Questionnaire completed by plaintiff's treating providers, NP Flick and Ms. Drozdiel. Id., pp. 24, 26.

Dr. Luna found, after only a single examination, that plaintiff had mild limitations in her ability to "perform complex tasks independently, make appropriate decisions and relate adequately with other". She found that plaintiff had moderate limitations "in her ability to maintain attention and concentration and appropriately deal with stress". Id., pp. 24, 280.

I agree with the Commissioner that, in some cases, a limitation in a plaintiff's RFC to work requiring a plaintiff to "understand, remember, and carry out simple instructions with few and minor changes to task" is sufficient to "amply address [p]laintiff's ability to handle stress at work". [11], p. 17; see Stone v. Colvin, 2016 U.S. Dist. LEXIS 92420, *13 (W.D.N.Y. 2016) ("[g]iven this record, which contains relatively sparse records of mental health treatment, the Court concludes that the ALJ's RFC finding, which limited plaintiff to simple tasks, adequately accounted for plaintiff's stress"). This, however, is not such a case.

Here, ALJ Bush did not discuss Dr. Luna's opinion that plaintiff has a moderate limitation in dealing with stress. Although ALJ Bush acknowledges this opinion and recites it in her decision ([8], p. 24), she does not provide an analysis of the stress limitation. See id., pp. 15-

-15-

29. Without any explanation, this court cannot determine whether ALJ Bush rejected Dr. Luna's opinion concerning plaintiff's ability to deal with stress, or whether ALJ Bush intended to address this limitation in her RFC.

This court's opinion in Bryant v. Berryhill, 2017 WL 6523294 (W.D.N.Y. 2017) is instructive. There, the ALJ found plaintiff had multiple severe impairments, including depression and anxiety. Id. at *2. The ALJ accorded "some weight" to the opinion of the consultative psychologist, Dr. Lin, who opined plaintiff had a "marked" limitation in appropriately dealing with stress. Id. at *3. While the ALJ cited Dr. Lin's opinion in his decision, he did not make any findings concerning plaintiff's stress, or how stress affected plaintiff's ability to work. Id. Nor did the ALJ explain why he rejected this portion of Dr. Lin's opinion or how the limitations incorporated in his RFC accounted for that impairment. Id. The plaintiff's treating mental health providers agreed that plaintiff had limitations in his ability to deal with normal workplace stress. Id. at *4. The court remanded plaintiff's claim because the ALJ did not address plaintiff's ability to handle stress:

> "[T]he ALJ did not make a finding as to the nature of [plaintiff's] stress, the circumstances that trigger it and how those factors affect her ability to work, and therefore the Court cannot conclude that the RFC assessment adequately addresses her ability to tolerate stress. The Commissioner may not substitute her own rational when the ALJ failed to provide one. . . . Given the evidence described above and the considerations articulated in S.S.R. 85-15, the Court finds that remand is required because the ALJ did not address [plaintiff's] ability to handle stress."

Id. at *4.

Here, as in Bryant, supra, the ALJ acknowledged, but did not discuss, Dr. Luna's moderate limitation on plaintiff's ability to deal with workplace stress. Plaintiff's own providers agreed that plaintiff was limited in this respect. Id., p.26, 371. Further, ALJ Bush assigned Dr.

Luna's opinion "great weight" - considerably more weight than that accorded the consultative opinion in Bryant. [8], p. 24. Accordingly, remand is required for a proper analysis that explains ALJ Bush's treatment of this limitation. Without such an analysis, this court is not able to meaningfully review the basis of ALJ Bush's possible rejection of that limitation or to conclude that Dr. Luna's opinion was incorporated into the RFC assessment. *See* Matthews v. Commissioner of Social Security, 2018 WL 4356495, *4 (W.D.N.Y. 2018) ("the ALJ's failure in this case to explain his conclusions prevents the Court from meaningfully reviewing the basis therefor and from concluding that Dr. Baskin's opinion was subsumed within the RFC assessment").

Finally, because this matter is remanded for further analysis and evaluation, I do not reach plaintiff's remaining arguments concerning ALJ Bush's analysis of the Functional Capacity Questionnaire completed by NP Flick and Ms. Drozdiel, or the ALJ's reliance upon the vocational expert's testimony. *See* [9-1], pp. 20-21,25-26. Discussion of these issues would be premature, as ALJ Bush's analysis of the remaining medical evidence and of the vocational expert's testimony may be affected by the ALJ's further fact-finding and analysis upon remand.[9]

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the

---

[9] *See, e.g.*, Webb v. Colvin, 2013 WL 5347563, *6 (W.D.N.Y. 2013) ("[r]esolution of the issues discussed . . . may affect Plaintiff's remaining contentions, therefore further comment at this time would be premature").

Commissioner's motion for judgment on the pleadings [11] is also denied.

 **SO ORDERED**.

Dated: April 3, 2020

   /s/ Jeremiah J. McCarthy   
JEREMIAH J. MCCARTHY
United States Magistrate Judge
